THE 
 STATE OF SOUTH CAROLINA
In 
 The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Kenneth Dale
McAteer,        Appellant.
 
 
 

Appeal From York County
John C. Hayes, III, Circuit 
 Court Judge

Unpublished Opinion No.  2003-UP-261
Submitted January 29, 2003 - Filed April 
 9, 2003

AFFIRMED

 
 
 
Assistant Appellate Defender Eleanor Duffy Cleary, of the 
 South Carolina Office of Appellate Defense, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Chief 
 Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General 
 Charles H. Richardson, Senior Assistant Attorney General Norman Mark Rapoport, 
 all of Columbia; and Solicitor Thomas E. Pope, of York; for Respondent.
 
 
 

PER
CURIAM:  Kenneth Dale McAteer was convicted of three 
 counts of first degree criminal sexual conduct (CSC) with a minor, a violation 
 of S.C. Code Ann. § 16-3-655 (2003).  He appeals, arguing the trial court erred 
 in excluding evidence of a purported prior sexual assault on the victim.  We 
 affirm. [1] 
FACTS
The charges in this case arise out of allegations that 
 McAteer was responsible for three acts of sexual assault involving the nine-year-old 
 female victim in January 2000, including digital penetration, cunnilingus, and 
 fellatio.  
McAteer and his common-law wife were best friends 
 with the victims parents, and their children considered themselves to be cousins.  
 The victims father had known McAteer for thirteen years, and the children of 
 the two couples often played together and spent the night in each others homes.  
 The victim was particularly close to McAteer.  He frequently played with her, 
 tickling her and wrestling with her.  
In January 2000, the victim stayed overnight with 
 McAteers two daughters in their bedroom.  According to the victim, all three 
 girls were sleeping on the floor when McAteer came in around midnight and asked 
 if she wanted to watch a movie.  The other two girls were asleep, so the victim 
 went into the living room and sat on McAteers lap.  While they watched television, 
 McAteer asked her if she knew how to French kiss.  The victim said no and when 
 he asked her further questions, she said she was not going to tell him anything.  
 The victim drifted off to sleep while sitting on McAteers lap and when she 
 woke up she felt someone kissing me on my face and something was like poking 
 me on my leg [ ].  The victim stated she was very sleepy so she went back to 
 the bedroom and fell asleep.  The next time she awoke, she felt McAteer touching 
 her chest and unzipping her pants.  McAteer then digitally penetrated her and 
 committed cunnilingus on her, and required the victim to perform fellatio on 
 him.  The victim stated that when he finished, McAteer told her, Now you know 
 everything.    
The victims father noticed that his daughter, 
 who had previously been very close to McAteer, became more withdrawn and her 
 attitude changed about staying over after that particular visit.  The victim 
 initially told her parents only that McAteer had asked her about French kissing.  
 The victim decided not to say anything further after her mother started crying 
 when she told her about McAteers question.  
The victims father stated that when he questioned 
 McAteer about his daughters statement, McAteer told him that he had overheard 
 the girls talking about French kissing, so he had gone into their bedroom to 
 reprimand them for it.  McAteer told him he had asked all the children if they 
 wanted to watch a movie, but only the victim had gotten up.    
The families continued some activities together, 
 but thereafter, in February or March of 2001, the victim revealed the details 
 of the sexual abuse to a school counselor, who contacted the victims parents 
 and the police.  McAteer was indicted on three charges of first degree CSC with 
 a minor.  
At trial, the pediatrician who examined the victim 
 in March 2001, Dr. Dwight Reynolds, testified that the victims hymen was asymmetrical, 
 narrower on the right side than the left, which was highly unusual.  He stated 
 that, while this was not complete evidence of penetration, it was consistent 
 with penetration and he knew of no natural cause that would result in this variation.  
 During cross-examination, Reynolds stated that, while he could not rule out 
 that the victim was born this way, it would be a long shot.  Assuming the 
 narrowing was caused by penetration, Reynolds stated it may have been weeks, 
 months, or even years before.  When asked whether it could have occurred as 
 early as when the child was three years old, Reynolds stated the child was 
 ten when he saw her and seven years seems outside the range of what [he] would 
 expect.  He stated that had the incident occurred even four years before, it 
 would be a real stretch that such an injury would be detected.  
McAteer denied the allegations of assault.  A jury 
 found him guilty of three counts of first degree CSC with a minor.  The trial 
 court sentenced him to concurrent terms of fifteen years in prison on each count.  

LAW/ANALYSIS
At trial, McAteer 
 sought to introduce testimony regarding an alleged incident of misconduct previously 
 committed against the victim when she was approximately three years old.  On 
 appeal, he contends the trial court abused its discretion in refusing to allow 
 the testimony.  We disagree.
The victims father testified 
 in camera that when his daughter was three years old, some young 
 boys tried to pull her panties down.  He stated he reported the incident and 
 his daughter went through psychological testing with dolls to determine what 
 had happened to her.  They concluded, however, that there was no foul play 
 and it was not necessary for her to have a medical examination.  
During later in camera 
 testimony, the victims mother testified that when her daughter was between 
 the ages of three and five, she told her that some young boys had tried to pull 
 her panties down, but she initially did not believe her as they were visiting 
 with family members.  The child went back out to play and less than an hour 
 later she returned and repeated her accusation.  At that point, they went to 
 a doctor, who sent a social worker to their house to interview the child using 
 dolls.  The social worker reported to the doctor that the boys had only tried 
 to pull the childs panties down, so the doctor decided no physical examination 
 was necessary.  The mother stated her child was not hurt and she never alleged 
 anything else had happened to her.  The mother stated she did not take the child 
 to the emergency room and did not remember seeing someone named Chastity Furtick 
 at the hospital.  
Defense counsel proffered the testimony of Chastity 
 Furtick, who stated that in 1993 or 1994, when the victim was three or four, 
 she was at the emergency room at Piedmont Medical Center when she saw the victim 
 and her mother come in.  She stated the victims mother came in crying and saying 
 that the child had gotten messed with and [she] was trying to check her in 
 but the nurse told her the child was too young to be examined with their equipment 
 and needed to see a pediatrician.  Furtick testified that the mother came over 
 and told her the child had been raped.  
Defense counsel sought to introduce Furticks testimony 
 to show that the victims hymen could have been penetrated by the previous incident 
 and was not caused by penetration by McAteer.  The trial court excluded the 
 testimony on the basis there was no evidence to support any allegation other 
 than the alleged one emotional statement by [the mother] to this witness [Furtick] 
 that any previous molestation had occurred with the minor and the only evidence 
 is . . . that the child complained about other boys wanting to pull down her 
 panties and that a follow-up was made of that and therefore Im not going to 
 allow the evidence.  
The admission or exclusion of evidence is left 
 to the sound discretion of the trial judge, whose decision will not be reversed 
 on appeal absent an abuse of discretion.  State v. Saltz, 346 S.C. 114, 
 121, 551 S.E.2d 240, 244 (2001).  While defendants are entitled to a fair opportunity 
 to present a defense, that right does not encompass the right to present any 
 evidence, regardless of its admissibility under the rules of evidence.  State 
 v. Hamilton, 344 S.C. 344, 359, 543 S.E.2d 586, 594 (Ct. App. 2001).  Although 
 relevant, evidence may be excluded if its probative value is substantially outweighed 
 by the danger of unfair prejudice, confusion of the issues, or misleading the 
 jury . . . .  Rule 403, SCRE.
We cannot say as a matter of law that the trial 
 court abused its discretion in this instance.  As noted by the court, the in 
 camera testimony indicated only that, when the child was three years 
 old, some young boys had tried to pull the childs panties down while she was 
 outside playing.  She was taken to a doctor but it was determined that no physical 
 examination was necessary as no sexual abuse was noted.  Defense counsels proffered 
 testimony that there was penetration based on the mothers alleged statement, 
 made over seven years prior, that the child had been raped does not, in and 
 of itself, support a claim of a prior sexual battery.  This is particularly 
 true in light of the fact that the pediatrician was specifically asked whether 
 the narrowing of the childs hymen could have occurred when she was three years 
 old and he stated this was outside the range of what [he] would expect.  Since 
 there was no physical examination or further inquiry, under these circumstances, 
 it would be speculative for the jury to determine penetration had previously 
 occurred and the testimony could tend to confuse or mislead the jury.  Accordingly, 
 we conclude the trial court properly excluded the proffered testimony.
AFFIRMED.
HEARN, C.J., GOOLSBY and SHULER, JJ., concur.

 
 [1]
   We decide this case without 
 oral argument pursuant to Rule 215, SCACR.